Please the Court, my name is Mahesha Subbaraman. It is my privilege to represent Social Security claimants Barbara Rush, Cynthia Parker, and Vanessa Nwobi. At issue today is proper interpretation of the Federal Vacancies Reform Act, or FVRA. The FVRA imposes a 210-day limit on how long acting officers may fill a vacant office, subject to an exception for when the President submits a nomination to the Senate for the nomination exception did not apply to Acting SSA Commissioner Nancy Berryhill because President Trump made a nomination after the 210-day limit expired. Yesterday, the 8th Circuit rejected this argument. I'd like to explain why the 8th Circuit got  Barbara Rush v. Kilolo Kijakazi Well, in fact, everybody's rejected the argument now, right? Mahesha Subbaraman Well, not entirely, Your Honor. I mean, the 8th Circuit Barbara Rush v. Kilolo Kijakazi District Courts. Mahesha Subbaraman Right. District Courts have embraced the argument the 8th Circuit reversed the leading decision on that, Brian T.D. So within the 8th Circuit, this argument has been rejected. There are other District Courts that are currently considering the argument. It remains to be seen whether they will embrace it. Justice Breyer Well, but the bottom line is that the 8th Circuit opinion is not particularly helpful. Mahesha Subbaraman Your Honor, I'm not going to pretend that it's helpful, except to say that I think that when you read the opinion and you identify the errors in it, it then becomes helpful for our position. Justice Breyer I'm going to have to say something about it, but when you received the 8th Circuit opinion, your reaction was not one of glee. Mahesha Subbaraman No, Your Honor. It certainly was not. But I think part of the reason for that is because with all due respect to the 8th Circuit, it cut a lot of corners to reach the conclusion that it did. And I'd like to explain what some of those corners are. Justice Breyer But to come back to the bottom line, in addition to whatever other mayhem would be raised by your view, you would invite us to create a circuit conflict? Mahesha Subbaraman That's correct, Your Honor. And I think that this Court has been more than willing to create a circuit conflict or to contribute to one to the extent that that was what the Court intended to do. But, you know, we don't do so gratuitously. And where there's a, where there's federal law and where there's an interest in maintaining uniformity is there is, without question here, because it deals with the way in which, with the powers that acting commissioners and others have, this is something where uniformity of federal law across the country is an interest to be weighed on the scale. Now, if the 8th Circuit were terribly and horribly wrong, we would, the uniformity interest wouldn't be paramount, I suppose. But all things considered, it's nice to have different regions of the country dealing with these cases in a similar way. Matthew Meyers Your Honor, I'm not disputing the general value of uniformity. But I think it should be a genuine uniformity rather than a uniformity which leads the Supreme Court to reverse, in which case we end up with a situation where courts and the executive branch relying on the erroneous decisions of multiple courts following one after another have to undo decisions as a result of that. So if I may speak briefly to what I think the 8th Circuit got wrong here, I think it becomes apparent why this Court should reject the 8th Circuit's analysis in much the same way that the 8th Circuit, the 4th Circuit rejected the 8th Circuit's analysis when the initial round of litigation surrounding Appointments Clause claims by Social Security claimants came to this Court in the Probst case, and the Court was looking at the question of whether issue exhaustion was required. The 10th and the 8th Circuits took the position it was required. This Court disagreed with them and said it wasn't. And we're asking the Court to do something similar here. Let me explain why. When it comes to 3346A2, the 8th Circuit essentially treats this provision, which spells out the 210-day limit and the pending nomination exception, as the beginning and end of its analysis. And what it gets wrong is that it fails to state that the analysis isn't about one statutory provision, it's about two provisions. Now, Section 3346A2 addresses what happens when the President nominates someone during the 210-day limit. It doesn't address what happens when the nomination happens after the 210-day limit. Section 3348B1 answers this question, and it says when there's a gap that the office is to remain vacant. And we submit that that text bars a nomination from reviving a past-serving acting officer. Now, if you look at the Senate's original draft of 3348B1, it expressly said in the Senate Committee Report, if the President does not submit a first nomination to the Senate to fill a vacant office within 150 days after the date on which a vacancy occurs, the office shall remain vacant until the President submits a first nomination. Now, the Committee Report expands on this point, saying the bill's enforcement mechanism is to make an office vacant if 150 days after the vacancy arises. Why are you dealing with the Committee Report rather than the text of the statute? Well, the reason I'm dealing with the Committee Report is because the Eighth Circuit ended its analysis by saying, we don't usually look to legislative history, but if we were to draft a provision of it, it was the change in the number of days. And what the legislative history shows is that there's actually a pretty big difference between what the Senate was looking at when it said that this statute allows for the revival of acting officers after the two- Well, I feel, you know, it may be outmoded of me, but I still think you have to start with the text of the statute. I'm happy to, Your Honor. So let's go to the text of the statute. But just to kind of close the point on the Committee Report, what the Committee Report was saying is that the sanction can be ended if the President submits a nomination. So we think the text of the statute that's relevant here is 3348B1, not so much 3346A2, but to turn to 3346A2. The Eighth Circuit says that 3346A2 enacts this freestanding pending nomination exception that allows the minute the President submits a nomination, an acting officer, even if they've served about 210 days, they come back the minute that that nomination occurs. That analysis is problematic for two main reasons. First, the Eighth Circuit says that there's a disjunctive or that separates 3346A1, which spells out the 210-day limit, and 3346A2, which spells out the pending nomination exception. A disjunctive or means that you can either have option A or option B. You can stay or you can leave, but you can't have both. And what the Eighth Circuit's own analysis seems to be doing is turning the word or into and, because what they're ultimately concluding is that Berryhill could serve 210 days. But where is the statute? There's a big gap in your, a big gaping hole in all of this. Because where is the provision in the statute that disqualifies someone who has served in the A1 period from serving in the A2 period? Now, it seems to me that your position is asking us to put a gloss on the statute. I would have expected, if your position was what Congress adopted, that we could point to some language saying that once you serve the 210 days, you are, in some ways, disqualified from serving thereafter. And I don't see that. Well, Your Honor, that's the language in 3348 that I started my remarks about. Because once the 3346A 210-day limit is expired and the President has not submitted a nomination, the question becomes, what happens? 3348B1 answers that question. It says, unless a person is performing in accordance with 3345, 3346, 3347, then the office shall remain vacant, period, full stop. Now, when the Senate originally wrote that provision, they recognized, if we say full stop, the office shall remain vacant, then that's going to close the office off permanently and disable the springback that we're contemplating at this time. So they added language saying, shall remain vacant until the President submits a nomination. And that's the history and the development of this provision that the Eighth Circuit completely omits from its analysis. It makes it seem as if 3346A2 operates in a seamless manner when it doesn't. When there's a break between 3346A1 and 3346A2, the provision, the penalty provision in 3348B1 comes into play. And that's the principal thing that's missing. Well, a lot of statutory interpretation comes down to whether Congress used the word and or whether Congress used the word or. And between A1 and A2, there's the word or. And the word or seemed to indicate the independence of the two periods rather than disqualifying one of the two. It seems to me that the disjunctive indicates the independence. You can serve on to A1, you can serve on to A2, and there's no statutory language disqualifying you from an A2 service. Well, Your Honor, again, we're pointing to the language of 3348B1, which intermediates that relationship. But then to speak to your point about or establishing 3346A2 as a disjunctive provision, we're not disagreeing. Why does B1 come in? Because B1, there's no failed nomination here. Well, no. What B1 says is that if a person is not performing the functions of this office, the office shall remain vacant. And you look at the drafting history behind that provision, Congress recognized that penalty provision to keep the office vacant. But that's not an issue here. It is an issue, Your Honor, because when Barry Hill's acting service ended in November No, it's not an issue because there's no failed nomination, which is what B1 speaks to. No, Your Honor. B1 speaks to if there isn't a person serving, what happens. And when Barry Hill's service ended in November of 2017, there was no person performing the service, and she affirmatively stepped down from the role of acting commissioner in March of 2018. As a consequence of those two realities, basically the provision, as we understand it, 3348B, says the position shall remain vacant, period. And that's the history that the Eighth Circuit glosses over. But let me speak briefly to the or point about these two provisions being independent. It's really important. When you have an either-or provision, it says you can do A or B. Barry Hill did A. She served 210 days. A or B means you can only choose one or the other. You can't do both. And even in your own reading, Your Honor, of the statute, you find that you have to slip in the word A, the word and, to say No, because The two parts of the statute work in harmony here, in a sense, because A1 tells the president to get on the stick and make the nomination, and A2 tells the Senate to get on with its Those different provisions do, and you can look at them and see that they work in tandem and work in harmony. And what your position would do is you would take a situation where someone like Barry Hill, who had served in an acting capacity, would be disqualified forever after from serving in that active capacity again. And what that does is it destroys a sense of continuity in government because many, many times the person who is serving the A2 period during a period of Senate confirmation is the person who has the experience as with the acting commissioner's position by virtue of service in A1. And this happens all the time, that someone who has served in an acting capacity then moves out because of the lapse of the 210 days, but then comes back in as a result of the fact that the president made the nomination. And what you do here, if we take your position, is we simply disrupt the continuity in government that's a fairly regular part of the way things work. Your Honor, may I briefly speak to that? You can. You've got a lot of time for rebuttal. You can take 13 minutes off at the start. You've got seven minutes. Thank you, Your Honor. I'll speak to the point on rebuttal. Good morning, Your Honors. May it please the Court, Anna Stapleton on behalf of the government. I can be brief this morning. I would just want to highlight a few points from the plain text that support the clear reading that subsection A2 permitted Miss Barry Hill's service at the time that she ratified the appointments of the Social Security ALJs. So the plain text of 3346A clearly defines two independent periods of acting service, and there are sort of three textual points that emphasize that. First is that each of the two periods defined have their own start and end dates. A1 runs from the date the vacancy occurs until 210 days thereafter. Can you talk just a tad louder or put the microphone up? Oh, I apologize, Your Honor, of course. Is that better? Yeah. Thank you. So again, A1 has its own start and end date. A2 also has its own start and end date. It runs from the date of the nomination until that nomination is no longer pending. It would be very strange for Congress to have defined A2 to have its own start date if that were not the case.  the week as we made that difference in my case, so my father was a child. I could be otherwiseециated from the midsummer party. All right. Next is all. So a point of clarification, Your Honor, here's the legal prohibition we have that relates to nonetheless not declaring this as a multi-party act. What I'm saying is that it is not part of this conflict, so there actually is this confusion that has to be resolved in unity from the beginning, specifically from the developer's perspective.   you simply downgrade the importance of experience in government. You say, well, because you served these 210 days, she was a deputy commissioner before, and now the commissioner, she has the experience both in a deputy capacity and she has the experience as the acting commissioner, and we're going to say, oh, you can't serve despite the fact that for purposes of continuity until the president does his job according to the statute or the senate does its job according to the statute. But you really disrupt the whole process of continuity in government, and you disqualify people who in more cases than not would be the most qualified to do the job. That's an excellent point, your honor, about the practicalities here. I would also point out that my friend's reading would be in conflict with 3345. 3345 sets out who is eligible to serve. First of all, it doesn't say anything that someone who served under A-1 is not eligible to serve. In the absence of a disqualified provision, the or becomes permissive language. That's correct, your honor. It's permissive. It's a permissive or. Absolutely, we agree, your honor. You can do it this way or you can do it that way or whatever, but it's a permissive or. That's correct. If I may just make one more point about 3345, it does give the president the prerogative to designate who will serve during the time periods that are defined in 3346. So it turned out that the same presidential order that was in effect when the vacancy first came up was also in effect when the nomination, when Mr. Saul's nomination was made. And that meant that that order pointed to the same office, to the deputy commissioner for operations. And Ms. Berryhill occupied that position at both points in time. So to accept my friend's reading would be to contradict the prerogative given to the president under 3345 to make that designation. Your good opposing governor gave that 8th Circuit decision on the hard time. He didn't like it. What do you say? Your honor, we think the 8th Circuit was correct. They made many of the points, they accepted many of the points that we have made in our briefing, including the points about the independence indicated by the word or. Also noted that there is no language in subsection 8-2 that would somehow suggest that 8-2 is dependent or conditioned on 8-1. Another important textual point there, your honor, is that the use of the word once in 8-2 that a person may serve once a first or second nomination is submitted to the Senate similarly indicates once just means whenever that happens. There's no language there to say that if a nomination is made only during the A-1 period, is that A-2 period triggered. In addition to the 8th Circuit, there are a growing number of district courts also in agreement with your position. That's correct, your honor. The vast majority of district courts have agreed here and I would note that brings the courts into alignment with the prevailing positions in both the executive branch and legislative branch. So the GAO, which is of course the arm of Congress that is tasked with monitoring compliance with the FVRA, has long stated that once a nomination is made, even if that nomination comes after the expiration of the initial 210 days, it does begin a second period during which acting service is permitted. And again, also of course the executive branch, we cited in our brief the 1999 guidance from OLC, which just shortly after the passage of the FVRA indicated that the executive understood that acting service was permitted once there was a nomination. I'm happy to answer any other questions, but if there are none, I'm also happy to see the remainder of my time and we would ask the court to affirm. Thank you. Thank you. Judge Wilkinson, I'd like to open with your interrogatory about continuity in government. I appreciate the point fully. Continuity in government is important, but that's not the objective of the Federal Vacancies Reform Act and let me frame that with a bit of history. For 200 years, this nation functioned under vacancies acts that did not provide for 210 days of service and did not provide for a tolling provision during the period of time that a person was serving. From 1795 to 1868, Congress said an acting officer can serve for 180 days and that's it. After that, if you want someone in the office, you have to nominate someone, the Senate has to confirm someone. From 1868 forward to 1893, that time limit of 180 days was reduced to 10 days. Then from 1891 to 1988, that time limit was increased slightly to 30 days. Then from 1988 to 1998, when the Federal Vacancies Reform Act was enacted, it was increased to 120 days with a tolling provision if the nomination was made during that 120 day period. So if you look at 200 years of unmitigated constitutional history about how this nation has functioned, the Congress has said we can function just fine and we have functioned just fine through two world wars, a civil war, and multiple other major crises. If it was a constitutional matter, then we could all become originalists and that would be kind of fun. But what we're dealing with here is a present statute. What I'm interested in is the present statute which was enacted with everyday realities in mind. Let's put it this way. The position of the executive branch, the number of offices in the executive branch, the confirmation process, all of those things have changed rather substantially since the 1800s. And what Congress said is these are the present day realities. We're going to enact a statute in response to those realities. And what you're talking about would have some salience if we were dealing with a constitutional provision. We could go back and be originalists. But we have a present day statute. All of the previous laws that I've been speaking about are not constitutional, they're statutory. The Vacancies Act existed from 1795 forwards. And in all of those preceding laws enacted by Congress authorizing acting appointments, the periods of service allowed under them were much shorter and they did not say that the minute the president nominates someone, the person can continue to serve endlessly. Now, let me speak Wait a minute. You're acting as if, that last phrase you used about acting as if the person can continue to serve endlessly. There's nothing in this statute that allows anybody to serve endlessly. The statute says to both the president and the Senate, get a move on. Get a move on. But your point is there's nothing that says it wouldn't be endless. Exactly. And more to the 210 days to get a move on and to nominate someone. And that's the key point here. And let me just add, if you adopt the government's interpretation, you run into a number of constitutional problems. And those constitutional problems arise because of this gap in service between when the 210 day limit ends and when the president ultimately submits a nomination, which might be a year later, it could be change during that period in time. And if it's simply the case that A2 automatically reactivates a person, regardless of those changes, then it's going to be the case that people who are otherwise constitutionally barred from continuing to serve in that acting position because of a change are automatically elevated into that position. Let me give you a very simple example, which we discuss in our reply brief. We give the example of an assistant attorney general who the president decides under the FVRA, I'm going to make you acting attorney general. This person, John Doe, we'll call him, serves for a 210 day period and afterwards the statute says the office shall remain vacant. The president doesn't nominate anyone. He leaves the office vacant. The Senate is in gridlock, can't do anything. During that period of time, for whatever reason, John Doe gets nominated and confirmed as an Article III judge. That is an office which qualifies under 3345A2. The president can designate someone who is serving in an office that requires a presidential nomination and a Senate confirmation to serve as an acting officer, much as the assistant AG position is. Let's assume John Doe becomes a judge and the next day afterwards the president finally submits a nominee for AG. At that point, according to the government's interpretation, John Doe is suddenly attorney general or acting attorney general once again, running afoul of Article III limits, due process limits, and separation of powers limits. So the problem that exists here in saying that acting service doesn't have to be present and continuous under the FVRA is that you run into the gap periods that can create constitutional problems that are otherwise avoided if the only way you can extend a person's service is if the nomination happens during that person's service. The practical fallout of this is one thing that concerns me because I was always in, you know, a lot of judges who were wiser heads than mine have said to me, the first rule of judging is do no harm. The second rule of judging related to the first is don't leave the situation in a greater mess than you found it. And the practical implications of this are the precise implications, the number of cases that would be overturned and the rest of that are unforeseeable, but they're bound to be large. And I know you say, well, these practical considerations don't matter, but if you had a stronger case on the statute, that would be one thing. But I don't see it. And so the fact that I can see the practical implications only through a glass darkly, but knowing that they are there, is still a matter of concern in addition to the difficulties with overturning the Eighth Circuit and the contextual difficulties, too. I understand, Your Honor, and if I could briefly respond to that. I know my time has expired, but I'll be brief. I understand the concerns that the Court has about the practical implications here. Magistrate Judge Schultz, when he wrote his decision in Bryan T.D., had the exact same concerns. And the government, I might add, posited great practical concerns back when we were And more significantly, I don't think that the practical concerns here are significant because of all of the factors that mitigate against a case ultimately receiving relief based on this argument. But putting that to the side for the moment. I'm going to take all of this up with Congress, because what I'm saying is Congress is in a much better position to clearly spell out to the executive branch how it has to behave than we are. And I know what the response is. Congress has already told us. We disagree about that. But at any rate, the proper instrument of control for this is Congress. I think they've said it. I think they've enunciated it. And, Your Honor, I appreciate the point 100 percent. I think... Why don't you tell the executive branch how to act? Congress has told them, we apply the act of Congress to the executive branch. That's absolutely right, Your Honor. And the way we read this act is consistent with what the Senate report says this act is meant to do, which is to spur the timely and prompt submission of nominations. And respectfully, the act doesn't do that unless the nomination is made during that 210-day period. Can I just ask one question? You were saying that it isn't going to have a big practical effect. Right. Tell me how that is. Sure, Your Honor. So in a Social Security context, if we're just asking the question, how is this going to affect Social Security claims? Of course, it doesn't just affect Social Security claims. Sure, Your Honor. I'll let you go there. But let me speak to Social Security claims. In order for a case to get to the district court level or even to the circuit court level, you need an adverse decision by an ALJ, a timely appeal to the appeals counsel, a timely appeal to the district court, a district court determination that the case should not be decided on the merits, and a timely Appointments Clause claim. Those are five pretty significant barriers. And when you think about how the Probst litigation unfolded where the government said the sky will fall unless you impose an issue exhaustion requirement on Appointments Clause claims, this Court rejected that argument. The Supreme Court unanimously rejected that argument. The sky didn't fall. And it's because those same limitations that apply there, respectfully we submit, apply here. To speak to the broader Executive Court ---- If we made the decision that you want us to make, certainly all the people that you represent think it will assist them, right? Certainly, Your Honor. I would think it would. Well, yes and no, Your Honor. These arguments, it's important to recognize if you have a strong merits argument, you're probably going to get relief faster on that than with one of these arguments, which the government is going to appeal and it's going to But I think it's equally important to recognize the sky will not fall if the Court agrees with the interpretation that we've posited here and that quite ---- The sky won't fall only because the government's going to appeal the petition to the Supreme Court, is that it? Well, Your Honor, I think that the Supreme Court, if it were to take up this issue, would agree with our position and I don't think this ---- And you don't think everybody is going to be all of your people in your client's position are going to be making this argument? It seems to me a pretty sure argument. The Supreme Court should not reverse us if we went your way. I would think they all would, anybody that's in this position. Well, they might try to make the argument, Your Honor, but whether they would be able to do so and whether their circumstances warrant doing so because of those five factors that I mentioned a moment ago significantly reduces the pool that is affected by this argument. I hope that makes sense. I hear you. Look, I understand that I'm arguing a tough argument here, especially in the wake of the Eighth Circuit's decision, but I hope the Court can understand we're not making this argument just to frustrate the lives of Congress or the President or anyone else. We're doing it because we believe that's what the statute commands and that's what the appointments clause in requiring a properly appointed commissioner commands. I'm just starting a conclusion, but we understand that. Thank you, Your Honor. We appreciate the time.
judges: J. Harvie Wilkinson III, Stephanie D. Thacker, Diana Gribbon Motz